IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LISA K. SNIDER )
 )
v. ) No. 3:18-0857
 )
ANDREW M. SAUL )
    Commissioner of )
    Social Security[1] )

**To:** The Honorable Waverly D. Crenshaw, Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for summary judgment (*see* Docket Entry ("DE") 15), to which Defendant has filed a response. *See* DE 23.[2] This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. *See* DE 4.

---

[1] Andrew M. Saul has been appointed Commissioner of the Social Security Administration. He is therefore automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiff failed to file a motion for judgment on the administrative record, as instructed in the Court's prior order. *See* DE 14. Plaintiff instead filed a motion for summary judgment pursuant to Fed. R. Civ. 56 despite the order's clear instruction *not* to do so. *See id.* at 1, n.1. The Court will treat Plaintiff's filing as a motion for judgment on the record, though counsel is encouraged to actually read the orders issued by the Court.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 15) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed an application for DIB on November 3, 2014 in which she asserted that she was unable to work due to spinal stenosis, cervicalgia, radiculopathy, cervical spondylosis, chronic obstructive pulmonary disease ("COPD"), and stomach problems. *See* Transcript of the Administrative Record (DE 11) at 87, 103.[3] She alleged a disability onset date of May 1, 2008. AR 87.

Plaintiff's applications were denied initially and upon reconsideration AR 87, 96. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Michelle Thompson on November 18, 2016. AR 49. On February 1, 2017, the ALJ denied the claim. AR 30-32. On January 8, 2018, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 14-16), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and this Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act through December 30, 2014.

---

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2008 through her date last insured of December 30, 2014 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: lumbar and cervical degenerative disc disease; and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could: lift and carry 10 pounds frequently and 20 pounds occasionally; sit for a total of six hours in an eight-hour workday; stand or walk for a total of six hours in an eight-hour workday; occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to pulmonary irritants such as dusts, odors, chemicals, poor ventilation, etc., and to hazards such as machinery and heights.

6. Through the date last insured, the claimant was capable of performing past relevant work as a Cashier, Liquor Establishment Manager, and Salesperson. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2008, the alleged onset date, through December 30, 2014, the date last insured (20 CFR 404.1520(f)).

AR 35-44.

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 404.1520(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature;

at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. § 404.1520(a)(4).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 404.1520(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. § 404.1520(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is

without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work and was therefore not disabled through her last date insured. AR 35-44.

### C. Plaintiff's Assertions of Error

Plaintiff's lone assertion of error is that the ALJ failed to properly evaluate the opinion evidence of record. DE 15-1 at 4. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 9.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

6

adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertion of error below.

**1. The Opinion Evidence.**

Plaintiff contends that the ALJ erred by failing to appropriately evaluate the opinion of Dr. Robert Gaston, a treating physician who provided two medical source statements ("MSS") concerning Plaintiff's physical condition. On September 7, 2017, Dr. Gaston concluded that Plaintiff's multiple physical and mental conditions produce numerous functional limitations that include an inability to, during an eight-hour workday, sit for more than two hours, stand or walk for more than one hour, or lift and carry 10 pounds on more than an "occasional" basis. AR 997-1003.[4] He also opined that Plaintiff would be limited to "occasional" stooping, balancing, and handling with the bilateral hands. AR 1001-02. Notably, Dr. Gaston failed to indicate the period of time to which his proposed restrictions applied despite a specific prompt asking him to do so. AR 1003.

This omission did not go unnoticed by Plaintiff's counsel, however, as Dr. Gaston was presented with a supplemental form opinion ("supplemental report") on December 1, 2016 in which he was asked the following two questions:

(1) As Lisa Snider's primary care physician for many years, did the same limitations reflected in your Medical Source Statement dated 9/7/16 apply to Lisa Snider on 3/30/14?

(2) As Lisa Snider's primary care physician for many years, did the same limitations reflected in your Medical Source Statement dated 9/7/16 apply to Lisa Snider on 5/1/13?

Dr. Gaston marked "yes" in response to each of these inquiries. AR 1090. The ostensible reason for the supplemental report was to demonstrate that Plaintiff's functional limitations arose prior

---

[4] "Occasionally" is defined in the MSS as less than 1/3 of an eight-hour workday. AR 1001.

to December 30, 2014, the date last insured ("DLI"), as such evidence is imperative to Plaintiff's argument. *See Nagle v. Comm'r of Soc. Sec.,* 191 F.3d 452 (table), 1999 WL 777355, at *1 (6th Cir. September 21, 1999) ("Evidence relating to a time outside the insured period is only minimally probative ... [Plaintiff] was required to prove that he was disabled prior to [the DLI] in order to be entitled to disability insurance benefits.") (internal citations and quotations omitted).

It is not disputed that Dr. Gaston is a treating physician. Therefore, the so-called "treating physician rule" applies, which requires the ALJ to give controlling weight to the opinion of a treating physician if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[5] If the opinion is not given controlling weight, the ALJ must determine the amount of weight to accord it based on multiple factors that include the extent of the treatment relationship, whether the physician is a specialist, and the degree to which the opinion is consistent with the record as a whole. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013). The ALJ must provide "good reasons" for the weight allocation that are "sufficiently specific to make clear to any subsequent reviewers." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).

The ALJ accorded "little weight" to Dr. Gaston's opinions based on the following explanation:

> Although Dr. Gaston is a treating source, his opinion was given after the date last insured, he did not indicate when the limitations began, and it is not well supported by medical findings for the period through the date last insured as it is inconsistent with generally normal findings on physical examination such as

---

[5] The treating physician rule applies to social security claims filed before March 27, 2017, such as the instant one. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

> normal sensation, reflexes, coordination, muscle strength and tone, [and] normal full range of motion of all joints .... Furthermore, Dr. Gaston noted that he only sees the claimant every four to six months for 15 to 30 minutes per visit.

AR 41. Plaintiff contends that such reasoning does not constitute substantial evidence to support the ALJ's denial of her claim.

The Court first notes an outstanding dispute regarding the date on which Plaintiff's allegedly disabling conditions began. Plaintiff claims that her alleged onset date ("AOD") is May 1, 2013 (DE 15-1 at 2), yet her application lists May 1, 2008 as the AOD. AR 87. Counsel attempted to amend the AOD during the administrative hearing, a request that the ALJ initially appeared to grant:

> Counsel: I did want to mention at the outset I suppose, we want to amend our onset date, your honor, if we could to 5/1/2013.
>
> ALJ: All right. Thank you.

AR 52. However, the ALJ subsequently stated in her opinion that she was denying Plaintiff's request to amend the AOD from 5/1/2008 to 5/1/2013. AR 33. The ALJ does not explain the basis for her denial of this request, although she does discuss Plaintiff's previous application for disability benefits that was filed on February 8, 2009 and denied on October 14, 2009. AR 33. Regardless, Plaintiff's brief contains no discussion of the original AOD or the denied request to amend the AOD, thus waiving any argument regarding the applicable time period. *McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011). Therefore, as noted by Defendant, the relevant period for purposes of the undersigned's analysis is between May 1, 2008, the AOD, and December 30, 2014, the DLI.[6]

---

[6] Notably, Plaintiff failed to dispute Defendant's characterization of the relevant time period via reply brief, as permitted by the local rules and the Court's prior order. *See* Local Rule 7.01(a)(4); DE 14 at 3.

Bearing this in mind, the Court finds that substantial evidence supports the ALJ's determination that Dr. Gaston's opinion was entitled to little weight. One issue with the opinion is that Dr. Gaston fails to identify when Plaintiff's allegedly disabling condition began, which is significant given that he issued the opinion almost two years after the DLI. *Walton v. Astrue*, 773 F. Supp. 2d 742, 750 (N.D. Ohio 2011) ("Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence relates back to the claimant's limitations prior to the date last insured.") (internal citations and quotations omitted). Dr. Gaston instead provided an ambiguous "yes" response to a prompt asking him to identify the date on which his proffered functional limitations began. AR 1003. Dr. Gaston's supplemental opinion purports that such limitations were present in May of 2013 (AR 1090), yet this does not clarify the issue of when Plaintiff's disabling symptoms began. The onset date, though not necessarily critical to the assessment of Dr. Gaston's opinion, was the focus of the criticism lodged by the ALJ. AR 41.

Relatedly, Plaintiff argues that the ALJ committed reversible error by failing to reference the supplemental opinion. The record shows that this report was not provided to the ALJ prior to the administrative hearing, nor did counsel for Plaintiff indicate during the hearing that any such supplemental report was forthcoming. To the contrary, counsel denied the existence of any outstanding opinions in response to the ALJ's inquiry regarding the completeness of the administrative record. AR 51, 70. Although it appears the report was eventually submitted (AR 48), the ALJ's failure to explicitly reference what is effectively an addendum filed weeks after the hearing was conducted is not conclusive of error. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted,

and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (internal citation omitted).

More importantly, the supplemental opinion does not provide any support for its rote declaration that Plaintiff's disabling conditions existed on May 1, 2013. AR 1090. This is a critical omission given that Dr. Gaston did not begin treating Plaintiff until well after May 1, 2013 (AR 614), and that the Sixth Circuit has expressed its disapproval of "check-box analysis" employed by a treating provider. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) ("We have previously declined to give significant weight to rudimentary indications that lack an accompanying explanation."). The deficiencies of the supplemental opinion therefore tend to bolster the ALJ's weight allocation. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion ... the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Plaintiff additionally faults the ALJ for emphasizing the relatively limited number of encounters with Dr. Gaston based on her contention that the frequency of such visits was appropriate for the nature of her condition. The record indicates that Dr. Gaston began treating Plaintiff on January 23, 2014 and saw her on four additional occasions prior to the DLI (AR 598, 606, 614, 1058, 1080), but continued to treat her well after December 30, 2014. Dr. Gaston thus saw Plaintiff at a higher frequency during the relevant time period than what was stated in his MSS. While number of provider visits is certainly a relevant factor, *see* 20 C.F.R. 404.1527(c)(2)(i), the Court agrees with Plaintiff that the ALJ's reliance on the frequency of treatment included in Dr. Gaston's opinion does little to support her decision.

11

Nevertheless, the Court finds that the ALJ's discussion of the inconsistencies between Dr. Gaston's MSS and the evidence documenting Plaintiff's physical condition during the relevant time period does provide adequate support for the ALJ's treating physician analysis. The ALJ highlighted the mild physical findings demonstrated by Plaintiff throughout her treatment with Dr. Gaston, including two visits immediately prior to the DLI during which Plaintiff exhibited no musculoskeletal or neurological symptoms. AR 1058-61, 1080-1085. She was diagnosed with "back pain" during a visit on December 8, 2014, but the ensuing physical examination revealed no focal deficits, normal sensation, normal reflexes, normal coordination, normal muscle strength, normal tone, and a full range of motion in all joints. AR 1082-83. The same findings were documented throughout Dr. Gaston's treatment during the relevant time period, along with Plaintiff's consistent denial of joint pain, joint swelling, stiffness, or muscle weakness. AR 598-603, 606-11, 614-19. Such findings stand in stark contrast to Dr. Gaston's MSS, which identifies Plaintiff's symptoms as including reduced range of motion, swelling, and weakness. AR 997.

The Court acknowledges that, as Plaintiff notes, the ALJ discussed multiple records from treatment that occurred after the DLI in her rejection of Dr. Gaston's recommendations. AR 41, 1022, 1026, 1041, 1051. Yet an ALJ does not commit error simply because she considers a claimant's post-DLI evidence, particularly when it includes continuing treatment with a provider whose opinion is at issue. *See Anderson v. Comm'r of Soc. Sec.,* 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) ("[M]edical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status.") (citing *Begley v. Mathews,* 544 F.2d 1345, 1354 (6th Cir. 1975)). The post-DLI records cited by the ALJ document, which include an annual physical examination performed by

Dr. Gaston approximately six months after the DLI, reflect the same mild findings that pervaded his treatment notes during the relevant period. AR 1019-28, 1039-44, 1049-54.

Dr. Gaston's opinion suffers from other defects, including his claim that Plaintiff's experience of pain "frequently" interferes with her attention and concentration (AR 998) despite repeatedly finding during the relevant period that Plaintiff exhibited "normal attention span and concentration." AR 601, 609, 617, 1061, 1083. Dr. Gaston also suggests that Plaintiff's medication causes drowsiness and fatigue (AR 998), yet Plaintiff repeatedly denied any side effects from narcotics and reported during multiple encounters shortly before the DLI that her "medication regimen is working and does not require any changes." AR 722.[7] Such evidence, coupled with Dr. Gaston's repeated recommendation that Plaintiff maintain a regular exercise program and lose weight (AR 602, 610, 618, 1061, 1084), tends to support the ALJ's evaluation. *See Blaim v. Comm'r of Soc. Sec.,* 595 F. App'x 496, 499 (6th Cir. 2014) ("Even the mildness of [the claimant's] treatment—mostly pain medication, weight loss, and exercise—suggested that his ailments were comparatively mild.") (citing *Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987)).

Despite such evidence, Plaintiff accuses the ALJ of "cherry-pick[ing]" the record to support her determination. DE 15-1 at 7. However, Plaintiff cites evidence that the ALJ in fact discussed in the administrative opinion, including relatively mild lumbar and cervical MRI findings showing degenerative changes without central canal stenosis, mild neuroforaminal narrowing, and moderate right neuroforaminal narrowing. AR 40. Such discussion, in conjunction with the ALJ's discussion of the mild physical examination findings that rebut Plaintiff's claims of disabling pain, suggests a balanced assessment of the medical evidence. *See*

---

[7] Notably, Defendant identifies 31 different instances in the relevant time period during which Plaintiff denied any side effects from her medication. DE 23 at 7-8.

13

*White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Moreover, Dr. Gaston's MSS does not reference any imaging studies in support of his opinion, but instead appears to hinge on Plaintiff's own reports of pain and shortness of breath. AR 997-98. Relying on such claims for support of his opinion is problematic, however, in light of Plaintiff's documented noncompliance with her treatment schedule (AR 726), which tends to undermine the credibility of her allegations of disabling pain, *Blaim*, 595 F. App'x at 499, and her decision to continue smoking between one and two packs of cigarettes per day despite suffering from COPD and receiving numerous admonishments from providers to discontinue the habit (AR 406, 414, 606, 1020), which similarly belies the alleged severity of her condition. *See Brown v. Soc. Sec. Admin.*, 221 F.3d 1333 (table), 2000 WL 876567, at *1 (6th Cir. 2000) ("Although Brown suffers from chronic obstructive pulmonary disease, his heavy smoking habit indicates that the condition is not disabling."). Plaintiff points to nurse practitioner notes indicating positive trigger points in the lumbar spine (DE 15-1 at 7), yet these findings do not negate those contained in the very same records showing normal mood and affect, no evidence of depression or anxiety, and no respiratory depression (AR 720-32), which contradicts Dr. Gaston's findings of depression, anxiety, and breathing problems (AR 997-98) and further supports the ALJ's ultimate determination. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010) ("Because the record adequately supports the finding that [the treating physician's] medical opinion was not supported by her own treatment notes and was inconsistent with the record as a whole, the ALJ was warranted in discrediting her opinion.").

The ALJ's articulation of the reasons for the weight given to Dr. Gaston's opinion is not flawless, but that is not the standard by which the ALJ's opinion is evaluated. *See Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) ("[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") (internal citation omitted). It is only necessary that the ALJ's decision enjoy the support of substantial evidence, which is confirmed upon review of the administrative record. Plaintiff's assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (DE 15) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge