# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| LISA K. SNIDER | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-00857 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security | ) | |

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Holmes has issued a Report and Recommendation ("R&R") (Doc. No. 24) in which she recommends that Lisa K. Snider's Motion for Summary Judgment In Support of Her Social Security Appeal (Doc. No. 15) be denied, and that the decision of the Commissioner denying Snider's claim for Title II Disability Insurance Benefits be affirmed. Snider has filed an Objection to the R & R (Doc. No. 25) relating to the treatment the Administrative Law Judge ("ALJ") gave to the opinions of Dr. Robert B. Gatson, Jr., a treating physician. Those same arguments were the focus of Snider's Motion for Summary Judgment.

Because Magistrate Judge Holmes' recommendation, if accepted, would be case dispositive, the Court's review is *de novo* under Rule 72 of the Federal Rules of Civil Procedure. This does not mean, however, that the Court must "reinvent the wheel" when taking a fresh look at the matter. Chen v. I.N.S., 87 F.3d 5, 7 (1st Cir. 1996); Franklin v. Anderson, 267 F. Supp. 2d 768, 793 (S.D. Ohio 2003). Magistrate Judge Holmes thoroughly analyzed Snider's claims regarding the discounting of Dr. Gaston's opinion. Indeed, that was the centerpiece of the discussion, covering fully 8½ pages of the 15-page R&R. The Court agrees with that analysis, and simply adds the following.

Dr. Gaston issued two reports. The first, a "Medical Source Statement" form dated September 16, 2016, is of limited utility because it was only an assessment of Snider's condition as

of that date. The onset of Snider's alleged disability, however was May 1, 2008 and her insured status expired on December 30, 2014, almost two years before Dr. Gatson's initial report. See, Van Winkle v. Comm'r of Soc. Sec., 29 F. App'x 353, 358 (6th Cir. 2002) ("Evidence relating to a time outside the insured period is only minimally probative."); Walton v. Astrue, 773 F. Supp. 2d 742, 750 (N.D. Ohio 2011) ("Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence "relates back" to the claimant's limitations prior to the date last insured").

Even ignoring the discrepancy in dates, Dr. Gaston's initial report was deficient because he was asked to opine on Snider's ability to sit, stand and walk, and rest during a regular eight hour workday. He answered, two hours, one hour, and two hours respectively. Later in the form, when asked to recap, his answer was different because he listed the time as being two hours, one hour, and one hour, respectively. This could have been simply the result of a scrivener's error, but no matter how the numbers changed, neither set of answers adds up to an eight hour work day. (Doc. No. 13, Administrative Record ("AR") at 997-1001).

Regardless, the ALJ did not ignore Dr. Gaston's initial report. Rather, she summarized the report and chose to discount it, writing:

> Although Dr. Gaston is a treating source, his opinion was given after the date last insured, he did not indicate when the limitations began, and it is not well supported by medical findings for the period through the date last insured as it is inconsistent with generally normal findings on physical examination such as normal sensation, reflexes, coordination, muscle strength and tone, [and] normal full range of motion of all joints. Furthermore, Dr. Gaston noted that he only sees the claimant every four to six months for 15 to 30 minutes per visit.

(Id. at 41) (internal citations omitted). These constitute "'good reasons' for discounting the opinion of a treating source," which are generally "given controlling weight" if "well-supported by

2

medically acceptable clinical and laboratory diagnostic techniques." Bolton v. Comm'r of Soc. Sec., 730 F. App'x 334, 337 (6th Cir. 2018) (citing Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013)).

A second report from Dr. Gatson was unmentioned by the ALJ. This is hardly surprising because Dr. Gatson did not execute the report until December 1, 2016, almost two weeks after the administrative hearing. When asked during the hearing if the record was complete, counsel indicated that a report relating to a neck surgery would be forthcoming, and the ALJ stated that the record would be left open for the submission of that report. (A.R. 51, 70). No mention was made of a supplemental report from Dr. Gatson, and the ALJ can hardly be faulted for not seeing it.

Regardless, Dr. Gatson's second opinion amounted to nothing more than a "yes" response to the following two questions propounded by counsel:

> (1) As Lisa Snider's primary care physician for many years, did the same limitations reflected in your Medical Source Statement dated 9/7/16 apply to Lisa Snider on 3/30/14?
>
> (2) As Lisa Snider's primary care physician for many years, did the same limitations reflected in your Medical Source Statement dated 9/7/16 apply to Lisa Snider on 5/1/13?

(A.R. at 1090). Even if the ALJ was aware of this opinion, it was not reversible error for her not to mention it because a "check-box analysis" unaccompanied by any explanation is "'weak evidence at best" and is "patently deficient." Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016); see also Ellars v. Comm'r, 647 F. App'x 563, 566 (6th Cir. 2016) ("[A]dministrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings."); Shepard v. Comm'r, 705 F. App'x 435, 441 (6th Cir. 2017) ("[T]he ALJ had good reason to discount [the

3

treating physician's] opinion," which "consisted largely of one word answers, circles, and check-marks.").

Ultimately, the question for the Court is whether substantial evidence supports the Commissioner's decision to deny benefits, not whether the ALJ rendered a "perfect opinion" *vis-a-vis* Dr. Gaston's reports. Shkabari v. Gonzales, 427 F.3d 324, 328 (6th Cir. 2005). It does.

"Substantial evidence is more than a scintilla of evidence but less than a preponderance, Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996), and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)." Baker v. Comm'r of Soc. Sec., 21 F. App'x 313, 315 (6th Cir. 2001). "If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently, Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir.1994), and even if the claimant's position is also supported by substantial evidence, Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)." Couch v. Soc. Sec. Admin., 16 F. App'x 306, 307 (6th Cir. 2001). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." Blakley v. Comm'r, 581 F.3d 399, 406 (2009) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).

In her Disability Report, Snider alleged disability due to chronic obstructive pulmonary disorder, spinal stenosis, cervicalgia, and cervical radiculopathy and spondylosis. In finding Snider capable of a restricted range of light work, the ALJ considered the record as a whole, including Snider's subjective complaints.

Dr. Gatson opined that Snider could lift 10 pounds occasionally and 5 pounds frequently, and

could sit, stand and walk from 1 to 2 hours each day, but he only began treating her in January 2014, which was nearly six years after the alleged onset date. Even then, the primary focus of the visits dealt with upper respiratory infections, although on one occasion Snider complained of back pain and, on another visit, presented with a urinary tract infection. While Dr. Gaston suggested that Snider had back pain, impaired sleep, weight change, tenderness, crepitus, swelling, and weakness, those findings were not documented in his treatment records. Indeed, between January 2014 and December 2014, his records showed that Plaintiff appeared in no acute distress with full ranges of motion, no edema, no neurological deficits, and normal reflexes, coordination, and strength. While Dr. Gaston also indicated that Snider suffered from depression and anxiety, his treatment notes show that she was alert and cooperative with appropriate mood and affect. Dr. Gatson also claimed that pain frequently interfered with Snider's attention span and concentration, and that medication caused side effects, even though Snider repeatedly denied any side effects to other treatment providers. Moreover, medications, including epidural site injections, allowed Snider to exercise regularly at the YWCA, perform water aerobics weekly, and feed, walk and bathe her dogs. Snider was also able to babysit her grandchildren and take them to the pool once a week.

The Court could go on, but the point is that there is more than a scintilla of evidence in the record showing that Snider did not establish her disability under Title II during her insured status. Accordingly, the Court rules as follows:

(1) The R&R (Doc. No. 26) is **APPROVED** and **ADOPTED**;

(2) Plaintiff's Motion for Summary Judgment on the Administrative Record (Doc. No. 15) is **DENIED**; and

(3) The final decision of the Commissioner denying benefits is **AFFIRMED**.

The Clerk of the Court shall enter a final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE